ORIGINAL

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

NORTHERN DISTRICT OF TEXAS
FILED

DEC - 5 2017

CLERK, U.S. DISTRICT COURT
By _____
        Deputy

UNITED STATES OF AMERICA

v.

EDWIN OPARAOCHAEKWE (01)
CHIAZOM OPARAOCHAEKWE (02)

No.  **3-17CR-633-B**

INDICTMENT

The Grand Jury charges:

At all times material to this indictment:

General Allegations

The Medicare Program Generally

1.      The Medicare Program (Medicare) was a federal health care program

providing benefits to persons who were over the age of 65 or disabled.  Individuals

receiving benefits through Medicare were referred to as Medicare "beneficiaries."

2.      Medicare was a "health care benefit program" as defined by 18 U.S.C.

§ 24(b), that affected commerce, and as that term is used in 18 U.S.C. § 1347.

Medicare-Covered Home Health Care Services

3.      Medicare paid for certain skilled services performed in the home,

commonly referred to as "home health care services," which were medically necessary.

According to 42 CFR § 409.42, for home health care services to be covered by Medicare,

all of the following requirements had to be met:

(a)     The beneficiary must have been confined to the home or an institution that is not a hospital or nursing facility (i.e., homebound);

(b)     The beneficiary must have been under the care of a physician who establishes the plan of care;

(c)     The beneficiary must have been in need of skilled services such as intermittent skilled nursing services, physical therapy, speech-language pathology services, or continuing occupational therapy services;

(d)     The beneficiary must have been under a plan of care that meets the requirements specified in 42 CFR § 409.43; and

(e)     The home health care services must have been provided by, or under arrangements made by a participating home health care agency.

4.      In order for a patient to be eligible to receive Medicare-covered home health care services, the law required that a physician certify in all cases that the patient was confined to their home. The condition of the patient should have been such that there existed a normal inability to leave home and, consequently, leaving home would have required a considerable and taxing effort. If a patient did in fact leave the home, the patient may nevertheless have been considered homebound if the absences from the home were infrequent or for periods of relatively short duration, or were attributable to the need to receive health care treatment.

5.      Among the written records required to document the appropriateness of home health care claims submitted to Medicare were: (a) a signed certification by an attending physician certifying that the patient was confined to his or her home and was in need of the planned home health care services; (b) a plan of care that included the physician order for home health care, diagnoses, types of services, frequency of visits,

prognosis, rehabilitation potential, functional limitations, activities permitted, medications, treatments, nutritional requirements, safety measures, discharge plans, goals, and physician signature; and (c) an assessment of the beneficiary's condition and eligibility for home health services completed by the home health agency, called an Outcome and Assessment Information Set (OASIS).

6.      Physicians and home health agencies typically used Form CMS-485 Home Health Certification and Plan of Care (CMS-485) prepared by the Centers for Medicare and Medicaid Services to satisfy the homebound certification and written plan of care requirements.

7.      Medicare compensation to home health care agencies was based on the Prospective Payment System (PPS).  Under this system, Medicare paid a home health care agency a base payment, which was adjusted based on the severity of the beneficiary's health condition and care needs.  The PPS payment provided home health care agencies with payments for each 60-day episode of care for each beneficiary.  If the beneficiary was still eligible for home health care after a home health episode, they may have been recertified for another 60-day home health episode.  There was no limit to the number of home health episodes that a beneficiary could receive.

8.      To obtain reimbursement from Medicare for home health care services provided to beneficiaries, home health agencies were required to submit claims that were accurate, complete, and truthful.

## Prime World Home Health Agency

9.      Prime World Home Health (Prime World) was an approved home health agency in the Medicare system, owned and operated by **Edwin Oparaochaekwe** and **Chiazom Oparaochaekwe**, a registered nurse.  Prime World was originally located in Irving, Texas but was later moved to Mansfield, Texas.

10.     During the course of the conspiracy described below, the defendants and their coconspirators caused Prime World to submit more than $3.2 million in false and fraudulent claims to Medicare.

## The Defendants

11.     **Edwin Oparaochaekwe**, a resident of Grand Prairie, Texas, was part-owner of Prime World and worked as a recruiter for Prime World.  **Edwin Oparaochaekwe** falsified documents to support and justify false claims Prime World submitted to Medicare.

12.     **Chiazom Oparaochaekwe**, a resident of Grand Prairie, Texas, was a registered nurse and part-owner of Prime World, with her husband **Edwin Oparaochaekwe**.  **Chiazom Oparaochaekwe** falsified documents to support and justify false claims Prime World submitted to Medicare.

## Count One
### Conspiracy to Commit Health Care Fraud
(Violation of 18 U.S.C. § 1349 (18 U.S.C. § 1347))

13.    Paragraphs 1 through 12 of this indictment are realleged and incorporated by reference as though fully set forth herein.

14.    From in or around December 2011, through in or around May 2017, in the Dallas Division of the Northern District of Texas and elsewhere, **Edwin Oparaochaekwe** and **Chiazom Oparaochaekwe** did knowingly and willfully combine, conspire, confederate and agree with each other and others known and unknown to the grand jury, to violate 18 U.S.C. § 1347, that is, to knowingly and willfully devise and execute a scheme and artifice to defraud a health care benefit program affecting commerce, as defined in 18 U.S.C. § 24(b), that is, Medicare, and to obtain, by means of materially false and fraudulent pretenses, representations, and promises, money and property owned by, and under the custody and control of, Medicare, in connection with the delivery of, and payment for, health care benefits, items, and services.

### Purpose of the Conspiracy

15.    It was a purpose of the conspiracy for the defendants and their coconspirators to unlawfully enrich themselves through, among other things: (a) submitting and causing the submission of false and fraudulent Medicare claims for home health care services, and (b) concealing the submission of false and fraudulent claims to Medicare and law enforcement.

## Manner and Means of the Conspiracy

16.     The manner and means by which the defendants and their coconspirators sought to accomplish the purpose of the conspiracy included, among other things:

## The Scheme to Defraud

17.     The defendants and their coconspirators knowingly and willfully submitted and caused to be submitted to Medicare false and fraudulent claims for home health care services on behalf of Medicare beneficiaries who were not eligible for home health care services and claims for services that were not provided.

18.     The defendants and their coconspirators knew that many of the beneficiaries enrolled as patients of Prime World were not homebound, not in need of skilled nursing services, were not referred for services by a physician, and not otherwise eligible to receive Medicare-covered home health care.

19.     The defendants and their coconspirators worked together to create CMS-485s, OASIS forms, and other paperwork with false information to make patient files appear complete and to support and justify the claims Prime World submitted to Medicare.

20.     As a part of the scheme to defraud, the defendants and their coconspirators did not obtain referrals from physicians who had legitimate physician-patient relationships with patients.  Rather, the defendants and their coconspirators marketed Prime World's services directly to Medicare beneficiaries.  Then, to obtain the required physician homebound certifications and plans of care, the defendants and their coconspirators sought and obtained signatures on CMS-485s from physicians who had no

prior relationship with the patients, and who, in many cases, never saw or treated them. The defendants and their coconspirators sought home health certifications for patients regardless of the patient's eligibility for home health care.

21.     As part of the patient certification and recertification process, **Chiazom Oparaochaekwe** signed CMS-485s and OASIS forms, which fraudulently represented patients' health conditions, and which were used to support and justify claims submitted for patients she knew were not eligible for home health care services.

22.     To conceal the fact that Prime World did not obtain physician signatures as part of the patient certification and recertification process, **Chiazom Oparaochaekwe** and **Edwin Oparaochaekwe** directed Prime World employees to seek physician signatures for CMS-485s after the 60-day home health episode had ended, which were used fraudulently to retroactively support and justify claims submitted for patients they knew were not eligible to receive Medicare-covered home health care services and on behalf of patients who did not receive legitimate services during the episode. **Chiazom Oparaochaekwe** also directed Prime World employees to submit claims for patients she knew did not have legitimately signed CMS-485s. For some of the unsigned CMS-485s, **Chiazom Oparaochaekwe** forged the signatures by photocopying physician signatures and affixing them on the unsigned document. **Chiazom Oparaochaekwe** then placed a copy of the forged document in the patient's medical record.

23.     During the period of the conspiracy, the defendants and their coconspirators caused Prime World to submit more than $3.2 million in claims, the vast majority of

which were fraudulent, to Medicare for home health care services and receive over $3.4 million in payments from Medicare.

All in violation of 18 U.S.C. § 1349 (18 U.S.C. § 1347).

Counts Two through Six
Health Care Fraud and Aiding and Abetting Health Care Fraud
(Violation of 18 U.S.C. §§ 1347 and 2)

24.     Paragraphs 1 through 23 of this indictment are realleged and incorporated by reference as though fully set forth herein.

25.     On or about the dates specified below, in the Dallas Division of the Northern District of Texas, and elsewhere, defendants **Edwin Oparaochaekwe** and **Chiazom Oparaochaekwe**, aiding and abetting each other and others, and aided and abetted by each other and others, did knowingly and willfully execute, and attempt to execute, a scheme and artifice to defraud Medicare, a health care benefit program affecting commerce, as defined by 18 U.S.C. § 24(b), and to obtain, by means of materially false and fraudulent pretenses, representations, and promises, money and property owned by, and under the custody and control of Medicare, in connection with the delivery of, and payment for, health care benefits, items, and services, that is, the defendants submitted and caused the submission of false and fraudulent claims to Medicare on behalf of patients:  (a) who were not homebound, (b) who were not under the care of the physician who signed the CMS-485, (c) whose health information was falsified in the OASIS forms; or (d) who did not receive skilled nursing services during the 60-day episode, each claim submitted to Medicare for a 60-day home health episode being a separate count:

| Count | Medicare Beneficiary | False Claim No. | Date Submitted | Approximate Amount Submitted to Medicare |
|-------|---------------------|-----------------|----------------|------------------------------------------|
| 2 | V.B. | 21435800732807TXR | 12/24/2014 | $1,350.01 |
| 3 | K.M. | 21620500151804TXR | 07/23/2016 | $1,264.40 |
| 4 | R.N. | 21517602538307TXR | 06/25/2015 | $2,645.01 |
| 5 | D.S. | 21415701504007TXR | 06/06/2014 | $1,370.01 |
| 6 | W.S. | 21616000755904TXR | 06/08/2016 | $1,589.40 |

All in violation of 18 U.S.C. §§ 1347 and 2.

Counts Seven through Ten
False Statements Relating to Health Care Matters and
Aiding and Abetting False Statements Relating to Health Care Matters
(Violation of 18 U.S.C. § 1035 and 2)

26.     Paragraphs 1 through 25 of this indictment are realleged and incorporated by reference as though fully set forth herein.

27.     On or about the dates specified below, in the Dallas Division of the Northern District of Texas, and elsewhere, the defendant, **Chiazom Oparaochaekwe**, aiding and abetting others, and aided and abetted by others, knowingly and willfully made and used materially false writings and documents, that is, CMS-485s with forged physician signatures, knowing the same to contain materially false, fictitious, and fraudulent statements and entries, in connection with the delivery of or payment for health care benefits, items, and services involving Medicare, a health care benefit program as defined in 18 U.S.C. § 24(b), each claim submitted to Medicare being a separate count:

| Count | Medicare Beneficiary | Description of False Statement | Approximate Date | Associated Claim No. | Approximate Amount of claim Submitted to Medicare |
|---|---|---|---|---|---|
| 7 | L.A. | Forged physician signature of I.M. on CMS-485 | Between 03/21/2013 and 03/15/2017 | 21402900992007TXR | $1,370.01 |
| 8 | P.A. | Forged physician signature of M.P. on CMS-485 | Between 01/19/2013 and 03/15/2017 | 21410700742807TXR | $950.01 |
| 9 | S.S. | Forged physician signature of J.C. on CMS-485 | Between 03/07/2012 and 03/15/2017 | 21324903277207TXR | $1,370 |
| 10 | B.S. | Forged physician signature of J.A. on CMS-485 | Between 09/11/2012 and 03/15/2017 | 21413601967607TXR | $1,220.01 |

All in violation of 18 U.S.C. §§ 1035 and 2.

Forfeiture Notice
(18 U.S.C. § 981(a)(1)(C), 18 U.S.C. § 982(a)(7), and 28 U.S.C. § 2461(c))

28.     Pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), upon conviction of the offense alleged in Count One, the defendants, **Edwin Oparaochaekwe** and **Chiazom Oparaochaekwe**, shall forfeit to the United States, any property, real or personal, which constitutes or is derived from proceeds traceable to the commission of the offense.

29.     Pursuant to 18 U.S.C. § 982(a)(7), upon conviction of the offenses alleged in Counts Two through Ten, the defendants, **Edwin Oparaochaekwe** and **Chiazom Oparaochaekwe**, shall forfeit to the United States, any property, real or personal, which constitutes or is derived from proceeds traceable to the commission of the offenses.

30.     Pursuant to 21 U.S.C. § 853(p), as incorporated by 28 U.S.C. § 2461(c), if any of the property described above, as a result of any act or omission of the defendants:

a.      cannot be located upon the exercise of due diligence;

b.      has been transferred or sold to, or deposited with, a third party;

c.      has been placed beyond the jurisdiction of the court;

d.      has been substantially diminished in value; or

e.      has been commingled with other property which cannot be divided without difficulty,

the United States intends to seek forfeiture of any other property of the defendants up to the value of the forfeitable property described above.

A TRUE BILL.


FOREPERSON


ERIN NEALY COX
UNITED STATES ATTORNEY


KATE RUMSEY
Assistant United States Attorney
Texas State Bar No. 24081130
1100 Commerce Street, Third Floor
Dallas, Texas 75242-1699
Telephone:  214-659-8713
Kathryn.Rumsey@usdoj.gov


JASON MEYER
Special Assistant United States Attorney
Texas State Bar No. 24078996
1100 Commerce Street, Third Floor
Dallas, Texas 75242-1699
Telephone:  214-659-8608
Jason.Meyer@usdoj.gov


Indictment—Page 14

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

THE UNITED STATES OF AMERICA

v.

EDWIN OPARAOCHAEKWE (01)
CHIAZOM OPARAOCHAEKWE (02)

INDICTMENT

18 U.S.C. § 1349 (18 U.S.C. § 1347)
Conspiracy to Commit Health Care Fraud

18 U.S.C. §§ 1347 and 2
Health Care Fraud and Aiding and Abetting

18 U.S.C. §§ 1035 and 2
False Statements Relating to Health Care Matters and
Aiding and Abetting

18 U.S.C. § 981(a)(1)(C), 18 U.S.C. § 982(a)(7) and 28 U.S.C. § 2461(c)
Forfeiture Notice

10 Counts

A true bill rendered

--------------------------------------------------------------------------------

DALLAS                                                          FOREPERSON

Filed in open court this 5th day of December, 2017.

---

_____

**Warrant to be Issued for all Defendants**

---

_____
UNITED STATES MAGISTRATE JUDGE
No Criminal Matter Pending